UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONNIE COLE,

                                    Plaintiff,
                                                            9:10-CV-1098
v.                                                          (NAM/TWD)

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, et al.

                                    Defendants.
_____

APPEARANCES:                          OF COUNSEL:

RONNIE COLE
91-A-9212
Plaintiff *pro se*
Mohawk Correctional Facility
6100 School Road
P.O. Box 8451
Rome, New York 13442-8451

HON. ERIC T. SCHNEIDERMAN             KEVIN P. HICKEY, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

## REPORT AND RECOMMENDATION AND ORDER

    This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, was

initially referred to Magistrate Judge George H. Lowe for Report and Recommendation by the

Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

N.D.N.Y. L.R. 72.3(c).  Upon Magistrate Judge Lowe's retirement on February 9, 2012, the case

was reassigned to me.  In his Amended and Supplemental Complaint ("Amended Complaint"),

Plaintiff Ronnie Cole ("Cole") has alleged that Defendant New York State Department of

Correctional Services[1] ("DOCS") and thirty of its employees violated his constitutional rights by

subjecting him to excessive force; showing deliberate indifference to his medical needs;

falsifying misbehavior reports; retaliating against him for filing grievances; conspiring to assault

him, cover up the assault, and make false misbehavior reports; confining him in segregation;

denying him a fair review of his Special Housing Unit ("SHU") confinement reviews; denying

his requests for restoration of visiting privileges; and denying him due process in connection with

a Tier III disciplinary hearing that took place in July of 2010.  (Dkt. No. 16.)  Plaintiff has also

asserted New York state law claims for assault and battery and negligence.  *Id.* at 1.  Currently

pending before the Court is Defendants' motion for partial dismissal of Plaintiff's Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for an

order directing Plaintiff to file a more definite statement under Federal Rule of Civil Procedure

12(e).  (Dkt. No. 62 at 1.)

   In his opposition to Defendants' motion, Plaintiff has consented to the dismissal of the

action as against named Defendants DOCS, Brian Fischer, Jack McDaniel, Albert Prack, Jeffrey

St. Louis, Edward Dauphin, R. Judway, M.J. Cappadonia, R.J. Miller, S. Purdy[2], C. Cucharale,

H. Smith, T. Meachum, J. Mecca, D. Ashe, Debora Kinderman, A. Papaleo, Judy Palmer, C.

---

[1]  On April 1, 2011, after the commencement of this lawsuit, the New York State
Department of Correctional Services and the Division of Parole merged into one comprehensive
agency entitled the New York State Department of Corrections and Community Supervision.
Because all of the events relevant to this case occurred prior to the merger, I will refer to the
Defendant agency as "DOCS."

[2]  S. Purdy was not included as a defendant in the caption of the Amended Complaint, as
he had been in the original Complaint.  However, he was identified as a defendant in the body of
the Amended Complaint.  (Dkt. No. 16 at ¶ 11.)

Vail, Ted Vauss, Mary Shrimp, and Renna Piecce.  (Dkt. No. 65 at ¶ 8.)  The nine remaining

Defendants are Ann Rabideau ("Rabideau"), First Deputy Superintendent for Health/Acting

Superintendent at Walsh Medical Unit/Mohawk Correctional Facility ("MCF"); Stephen

McCarthy ("McCarthy"), Deputy Superintendent of Security at MCF; G. Lawrence

("Lawrence"), Corrections Sergeant at MCF; Toney Szajer ("Szajer"), Corrections Sergeant at

MCF; A. Durante ("Durante"), Corrections Officer at MCF; J. Griffith ("Griffith"), Corrections

Officer at MCF; L. Russin ("Russin"), Registered Nurse at MCF; G. Reese ("Reese"), Licensed

Practical Nurse at MCF; and Elaine Paluck ("Paluck"), Health Care Assistant at MCF.

By Plaintiff's own assessment, the claims against the remaining Defendants are limited

to: (1) use of excessive force; (2) retaliation; and (3) deliberate indifference to Cole's medical

needs for injuries he sustained as a result of the use of excessive force against him.[3]  *Id.* at ¶¶ 2.

---

[3]  None of the claims in Plaintiff's Amended Complaint that arose out of, or are related to, the July 2, 2010 Tier III inmate misbehavior report and hearing held in connection with the report have been included in Cole's list of remaining claims and, with the exception of Rabideau and McCarthy, this action has been dismissed as against the Defendants allegedly involved in those claims.  (Dkt. No. 65 ¶¶ 2, 9.)  Furthermore, Plaintiff has not addressed the claims in his Memorandum of Law.  *Id.* at 12-31.  Plaintiff has likewise elected not to include any claims that might be found to have arisen out of Rabideau's alleged failure to review the denials of his SHU confinement reviews in a fair manner, and Rabideau and McCarthy's denial of his requests for restoration of his visiting privileges among the claims he intends to pursue.  Nor has Cole argued against dismissal of those claims in his Memorandum of Law.  *Id.* at ¶¶ 2 & 9; (Dkt. No. 16 at ¶¶ at107-110; Dkt. No. 16-2 at 27-35, 46-49; Dkt. No. 65 at 12-31).  Given Plaintiff's clear showing of intent not to pursue claims arising out of the July 2, 2010 Tier III Inmate Misbehavior Report and the hearing on the Report, the review of the denials on his SHU confinement reviews, and the denial of his requests for restoration of visiting privileges, I have not addressed the sufficiency of those claims in this Report-Recommendation and recommend that they be dismissed as abandoned by Plaintiff.

In his Memorandum of Law in opposition, Plaintiff has indicated his intent to pursue supervisory liability claims against Defendants Ann Rabideau and Stephen McCarthy.  (Dkt. No. 65 at 3, 25-26.)  In addition, Cole's Memorandum of Law appears to leave open the possibility that he intends to pursue his state law claims for negligence and assault and battery.  *Id.* at 2-4.

Plaintiff's use of excessive force claims against Defendants Durante, Szajer, Griffith, and Lawrence are not presently at issue because Defendants have excepted those claims from their motion to dismiss.[4]  (Dkt. No. 62 at 1; Dkt. No. 68 at 1.)  Therefore, the sufficiency of those claims is not addressed herein.

For the reasons that follow, I recommend that Defendants' motion for partial dismissal of the Plaintiff's Amended Complaint be **GRANTED** in part and **DENIED** in part, and order that Defendants' motion for a more definite statement be **DENIED.**

## I.      BACKGROUND

### A.      Defendants Durante, Szajer, Griffith and Lawrence

Plaintiff is a prison inmate housed in the Walsh Regional Medical Unit at MCF.  (Dkt. 16 at ¶ 3.)  The allegations in the Amended Complaint describe a contentious relationship between Cole and Defendants Szajer, Durante, Griffith and Lawrence, which Plaintiff claims contributed to his filing of a number of grievance complaints.  (*See generally* Dkt. No. 16.)  According to Plaintiff, that, in turn, resulted in a series of retaliatory actions by the four Defendants, including harassment, the filing of numerous false misbehavior reports against him, and four alleged instances of the use of excessive force.  (Dkt. No. 16 at ¶¶ 70-78, 80-84, 87-98.)

Because Plaintiff has made arguments in support of his claims for supervisory liability and negligence, assault and battery in his Memorandum of Law, I am assuming for purposes of this motion that he does not intend to abandon them even though they were not included in his list of remaining claims.  Furthermore, inasmuch as Plaintiff's Amended Complaint includes allegations of conspiracy against some of the remaining Defendants that relate to claims he intends to pursue, Cole's allegations of conspiracy are addressed herein as well.

[4]  In their letter brief in reply to Plaintiff's opposition, Defendants also advised the Court that they were withdrawing their motion to dismiss on qualified immunity grounds without prejudice.  (Dkt. No. 68 at 2.)  Since Defendants did not pursue dismissal on qualified immunity grounds in their initial motion papers, there was nothing to withdraw.  (Dkt. 62-1 at 1-26.)

1.      **Defendant Durante**

Defendant Durante is a corrections officer at MCF whose duties include escorting medical staff in and out of inmates' rooms during medication and treatment.  (Dkt. No. 16 at ¶ 20.)  Plaintiff claims that on September 30, 2010,  Durante told him that he could "kick [Cole's] ass" and nothing would happen because We hate Niggers you terrorist Muslims, and then spit in his face and hit him on the head with big brass keys while continuing to say "Nigger, Nigger, Nigger."  *Id.* at  ¶ 70-2.[5]

Durante filed an inmate misbehavior report the same day charging Cole with yelling at him: "You are a straight up bitch, a Nigger!  Open your ass up, I'm gonna fuck you, open your ass, I'm gonna fuck you."  (Dkt. No. 16-2 at 25-26.)   Plaintiff was found guilty of both harassment and making threats and was given thirty days in keeplock.  *Id.* at 26.  Durante filed another misbehavior report against Plaintiff on October 1, 2010 charging him with threats and harassment.  (Dkt. No. 16-2 at 22-24).  He claimed that Cole had called him a "Nigger" several times and yelled "While you're here someone is 4 foot up in your wife's ass, like I'll be up in yours."  *Id*. at 22.  Plaintiff was again found guilty and given thirty days of keeplock and thirty days loss of earphones and radio.  *Id*. at 23.

According to Plaintiff, on October 3, 2010, during his prayer time while he was making a prayer wheel, Durante came up behind him, pulled the front wheels of his wheelchair off the floor, dropping him backwards, and then began kicking him in the "butt" as he called him "cripple Nigger Muslim."  (Dkt. No. 16 at ¶ 74.)   Cole filed grievance complaint #MHK-11844-

---

[5]  Plaintiff's Amended Complaint contains an extra paragraph 70 (located between paragraphs 72 and 73 on page 19), which is referred to herein as Paragraph 70-2.

10, dated October 4, 2010, complaining of the alleged assaults on September 30 and October 3, 2010. (Dkt. No. 16-3 at 33.) Plaintiff filed a second grievance complaint, #MHK-11845-10, the same day complaining that his request to file an injury report in connection with the alleged assault by Durante had been wrongfully denied.[6] (Dkt. No. 16-3 at 34.) The grievance complaints were denied because Durante denied spitting in Plaintiff's face, striking him with keys, kicking him, and flipping him out of his wheelchair. Moreover, the nurse involved reported that Cole had not advised her of any physical altercation with the officer and had not requested an injury report or allowed a medical exam, and that the photographs and medical injury reports did not support any injury to Plaintiff. *Id*. at 33-34.

Durante filed another misbehavior report for harassment against Plaintiff on October 5, 2010, the day after Cole had filed a grievance complaint against him. (Dkt. No. 16-2 at 19-21.) In the Report, Durante claimed that on October 4, 2010 Cole had said "get out Nigger" and thrown a water cup at him. *Id*. Cole was again found guilty and given a thirty day loss of radio. *Id*. at 20. Durante also filed a misbehavior report on Plaintiff the following day. (Dkt. No. 16-2 at 13-15.) It charged Cole with violent conduct, propelling food or water, interference, and wasting state property. *Id*. According to Durante, Plaintiff had slapped his food trays towards Defendants Szajer and Durante after Szajer had placed them on the table. *Id*. Cole was found guilty of all of the claimed violations and given a six day loss of packages, commissary, earphones/radio, and loss of good time. *Id*. at 14.

---

[6] Plaintiff has not included copies of his two October 4, 2010 Grievance Complaints as exhibits to his Amended Complaint (Dkt. No. 16), his opposition papers (Dkt. No. 65), or in the Appendix to his Supplemental Affidavit of Truth. (Dkt. Nos. 18-1, and 18-2.) He has, however, submitted the denials from which it is apparent that both arose out of the incidents with Durante that had occurred on September 30, 2010 and October 3, 2010. (Dkt. No. 16-3 at 33-34.)

On October 13, 2010, Durante filed a misbehavior report against Plaintiff for failure to follow a direct order, attempted smuggling, and failure to comply with correspondence procedures. (Dkt. No. 16-2 at 16-18.) The misbehavior report was filed after another corrections officer had found a letter in a book he had picked up from Cole. Durante's charges against Plaintiff were dismissed. *Id*. at 17. The Affidavit of inmate Montell Emerson, included as an exhibit to Plaintiff's Amended Complaint, avers that on October 14, 2010, the day the misbehavior report was filed, Durante entered his living area and made the following statement to him:

> Your buddy Cole (who's living area is 52.A2.15-1) just said to me that he doesn't want any problems and seeking a truce; the only way I'll think about giving him a truce is first I have to speak with my boys, then he has to beg me, and after that he has to write upfront and says he lied about me attacking him ... I already have a couple assaults on file and I have to watch my ass with Dep. McCarthy.

(Dkt. No. 16-1 at 1-2.)

### 2. Defendant Szajer

Defendant Szajer is a corrections sergeant responsible for supervising corrections officers at MCF. (Dkt. No. 16 at ¶ 25.) Plaintiff had filed a grievance complaint against Szajer on September 27, 2010, three days prior to the September 30, 2010 incident involving Durante. (Dkt. No. 18-1 at 37-38; Dkt. No. 65 at 23.) The grievance complaint, which charged Szajer with making false claims against Cole with regard to his use of pre-stamped envelopes for mailing, also alleged a pattern of harassment and threats by Szajer. *Id.* Plaintiff claims that Szajer told him that the harassment and threats would continue as long as he kept making use of the Inmate Grievance Resolution Committee. (Dkt. No. 18-1 at 38.) Plaintiff's grievance complaint was

denied on the grounds that Szajer had denied harassing him, and the Lieutenant and Corrections

Officer whom Cole had identified as witnesses to the alleged harassment denied seeing Szajer

harass him.  (Dkt. No. 18-2 at 32.)

In his Amended Complaint, Plaintiff has not specifically alleged that Szajer was either

present during the assault by Durante on September 30, 2010 or that he participated in the

assault.  (Dkt. No. 16 at ¶ 70.)  Cole has, however, alleged generally in his Amended Complaint

that Szajer joined in on Durante's assaults on him from July 16, 2010 through October 31, 2010,

*id*. at ¶ 103, and claims in his Supplemental Affidavit and Appendix that he was assaulted by

both Szajer and Durante on September 30 and October 3, 2010.[7]  (Dkt. No. 18 at ¶ 26.)

Moreover, according to Cole, both Durante and Szajer continued to harass him and file false

behavior reports after the alleged assaults.   (Dkt. No. 16 at ¶¶ 73 and 78.)  In addition, Cole has

alleged that Szajer co-signed four of the misbehavior reports submitted by Durante in October of

2010.  (Dkt. No. 16 at ¶ 105.)

In a series of letters written to Defendants Rabideau and McCarthy, the Inspector General,

Governor Patterson, and the Chair of the New York State Commission of Correction in early

October of 2010, Plaintiff alleged a pattern of harassment, including the filing of false

misbehavior reports, by Szajer.  (Dkt. No. 16-3 at 3-7, 9-12, 17-19.)  On October 1, 2010, Cole

wrote to Rabideau asking for her assistance in the matter of staff harassment by Szajer and

Durante, whom he claimed had filed false misbehavior reports against him in retaliation for his

filing of grievance complaints.  (Dkt. No. 61-3 at 3-4.)   In an October 4, 2010 letter to Rabideau,

---

[7]  Plaintiff also claims that Szajer was present for the alleged assault by Durante on
September 30, 2010 in his October 24, 2011 unverified surreply to Defendants' October 13, 2011
reply letter.  (Dkt. No. 69 at 1.)

Plaintiff accused Szajer of being the driving force behind Durante's misbehavior reports against him.  (Dkt. No. 16-3 at 5.)   Cole sent a similar letter to McCarthy the same day.  (Dkt. No 16-3 at 7.)[8]

### 3.    Defendant Griffith

Defendant Griffith is a corrections officer at MCF whose duties include escorting the medical staff during medication rounds.  (Dkt. No. 16 at ¶ 27.)  According to Plaintiff, Griffith had a history of harassing him by calling him names like "dumb monkey" and "Nigger," saying "Nigger death to all Muslims," trashing his incoming mail and pictures, cutting up his kufies/head coverings, and turning off the water in his room so that he could not cleanse himself before the start of Islamic prayer.  *Id.* at ¶ 78.

Plaintiff maintains that at 9:35 p.m. on October 29, 2010, Griffith entered his room as Defendant Reese was giving him his 9:45 p.m. medication and told him to "shut the *uck up Cole and take the *ucking medication before I straight drill you in the *ucking face."  *Id.* at ¶ 82. After Cole responded that he had already taken his medication, Griffith allegedly told the medical staff in the room (Defendants Reese and Paluck), to step out for a minute and then proceeded to kick Cole's bedside table tray into his wheelchair, pinning him in the chair and causing his two

---

[8]  In his October 4, 2010 letter to the Inspector General's Office, Plaintiff claimed that Szajer had come to him in a threatening manner, kicked his wheelchair, and said "we will *ucking put you in the hospital on many machines" and then lie and say that Cole had attacked him.  (Dkt. No. 16-3 at 9.)  In his letter of the same date to Governor Patterson, Plaintiff maintained that Szajer came to him after Durante had spit at him and hit him with the keys and told him it would be like that when he filed a grievance complaint against Szajer and proceeded to punch him in the chest and tell him to fight back because that is what Szajer and Durante and other corrections officers wanted him to do so that they could take his life.  (Dkt. No. 16-3 at 11.) Plaintiff said the same thing in an October 4, 2010 letter to the Chair of the New York State Commission of Correction.  (Dkt. No. 16-3 at 15.)

cups of Ensure Plus to splash all over his personal belongings.  *Id.*  at ¶ 83.  According to

Plaintiff, Griffith then punched him with a closed fist on the right side of his face, grabbed him

by the neck and head butted him, and then began choking him until he became dizzy.  *Id*.

Griffith then struck Cole on the left side of his chest with a closed fist with some kind of silver

metal object.  *Id.* at ¶ 84.[9]

Griffith filed a misbehavior report charging Cole with violent conduct, assault on staff,

interference with employee, threats, and refusing a direct order.  (Dkt. 16-3 at 39; Dkt. No. 18-1

at 8.)  In his narrative of the October 29, 2010 incident, Griffith claimed that Plaintiff was

harassing the medical staff, and when Griffith ordered him to stop, Cole became more abusive

and threatening and said "fuck you motherfucker.  I'll kick your ass."  *Id*.  Griffith wrote that

Plaintiff then began removing his clothes as if to prepare for a fight at which point Griffith

ordered the medical staff to leave the room.  Griffith maintained in the Report that as he too

prepared to leave the room, Cole stood up and launched himself at Griffith and grabbed the

Defendant's biceps.  Griffith claims to have defended himself by pushing Cole in the chest with

both hands.  Cole then fell over backwards. *Id*.  Plaintiff was found not guilty on the charges of

violent conduct, assault on staff, and refusing a direct order in Griffith's Misbehavior Report and

guilty of interference with employee and making threats.  (Dkt. No. 18-1 at 6.)  He was given one

month in keeplock and a one month loss of packages, commissary, and earphones.[10]  *Id*.

Plaintiff filed an inmate injury report in which he claimed that Griffith had punched him

_____

[9]  Cole described the alleged assault by Griffith in an October 29, 2010 letter to Defendant McCarthy.  (Dkt. No. 16-3 at 35-36.)

[10]  It appears that the guilty findings may have been reversed by the Central Office Review Committee on December 8, 2010.  (Dkt. No. 18-1 at 1.)

with a closed fist, choked him, and hit him in the side of the chest.  (Dkt. No. 16-3 at 41-42.)
The injuries sustained by Cole, as described by the nursing staff on both the use of force report
and inmate injury report, are largely consistent with Plaintiff's description of the alleged assault,
including: "(1) ½ inch abrasion above bridge of nose (2) 1 x ½ inch abrasion Rt. cheek (3) 3x4
inch pink area [left] chest (4) 1 x ½ inch pink area below Rt ear (5) 3/4 x ½ inch pink area below
[left] ear."  *Id.* at 42-44.

Plaintiff has also alleged that Griffith was part of a conspiracy to assault him, cover up
the assault, and make false misbehavior reports.  *Id*. at ¶ 95.

### 4.    Defendant Lawrence

Defendant Lawrence is a corrections sergeant at MCF, and his duties include supervising
corrections officers working during his shift.  (Dkt. No. 16 at ¶ 19.)  On October 5, 2010,
Lawrence filed a misbehavior report on Plaintiff for threats of violence arising out of an incident
that had occurred that morning.  (Dkt. No. 61-2 at 38.)  According to Lawrence, Plaintiff told the
Defendant that he was going to "kick it up a notch," and when Lawrence asked what he meant,
Cole said "you better call Judway, I'm not scared of you Lawrence and you're going to get hurt.
I'm going to beat your ass."  *Id.*   Plaintiff was found guilty and given one month without his
radio.  *Id*. at 39.

Lawrence appears to have been the subject of Plaintiff's grievance complaint #MHK
11849-10 filed on October 7, 2010.[11]  The complaint charged Lawrence with threatening and
harassing Cole with actions that included tampering with his food and filing a false misbehavior

---

[11]  The Grievance Complaint itself is not among the papers filed by Plaintiff.  However, it
appears from the denial of the Grievance that Lawrence was the subject.  (Dkt. No. 16-3 at 33.)

report**.**  (Dkt. No. 16-3 at 33; Dkt. No. 18-1 at 27.)

According to Plaintiff, on October 31, 2010 at 1:30 p.m., Lawrence came into his room

while he was sitting at his desk.  *(*Dkt. No. 16 at ¶ 89.)  Cole claims that Lawrence pulled at the

front of his pants and pulled out his penis and made lewd comments to Cole including telling him

"I *uck many muslims Cole and am here to *uck you as well."  *Id*.  Lawrence began to walk

towards Cole and pushed over his bedside table causing two cups of Ensure Plus to fall from the

table on the side where Lawrence was standing.  *Id*.  Plaintiff contends that Lawrence continued

to push his wheelchair and slipped and fell on the Ensure, making the Defendant angry.  *Id*. at ¶

90.

Cole has alleged that Lawrence got up and yelled at Plaintiff that he was going to "fuck

his ass up" and then with a closed fist punched Cole below his left eye and stabbed him in the left

hand with a silver pen knife when Cole attempted to protect his face with his hands.  *Id*.  Plaintiff

claims that another corrections officer who was present punched him in the hand, and Lawrence

and the other officer kicked Plaintiff then grabbed him in the chest and slung his wheelchair over

the bedside table leaving his legs pinned.  Lawrence and the corrections officer allegedly

continued to punch Cole and call him names including "nigger terrorist."  *Id*.  Lawrence then spit

on Plaintiff's face and left him on the floor with his wheelchair tipped over and the table on his

legs where he remained for an hour or more.  *Id.* at ¶¶ at 91-92.

Following the incident, Lawrence filed both misbehavior and use of force reports.  (Dkt.

No. No. 16-2 at 43-45; Dkt. No. 18 at 49-51.)  In the reports, Lawrence wrote that while he was

supervising Cole's medication, Cole became violent and repeatedly screamed at Lawrence to

show himself to the Plaintiff.  (Dkt. No. 16-2 at 43; Dkt No. 18 at 49.)  As he entered the room to

address the issue, he slipped and fell in a puddle of Ensure landing on his back left side. *Id.*

Cole then pushed his tray table onto Lawrence striking the Defendant in the right shin. Lawrence

scrambled to his feet and took control of the tray table and pushed it into Cole knocking him and

his wheelchair over and onto the floor. *Id.* The misbehavior report charged Plaintiff with assault

on staff and violent conduct. (Dkt. No. 16-2 at 43.) Cole was found guilty on both charges on

November 8, 2010 and given 270 days in the SHU, 180 days without packages and commissary,

and 12 months loss of good time. *Id.* at 44.

**B.**     **Defendants Russin, Reese, and Paluck**

Defendants Russin, Reese, and Paluck are all part of the medical staff at MCF. (Dkt. No.

16 at ¶¶ 28-30.) Plaintiff's claims against them relate to Defendant Griffith's alleged assault on

October 29, 2010.

Defendant Russin is employed as a Registered Nurse at MCF and is charged with

supervising the medical staff on her post and listing inmates' complaints. *Id.* at ¶ 28. In his

Amended Complaint, Plaintiff has alleged that after he was assaulted by Griffith, he pressed his

call button and Russin answered. *Id.* at ¶ 85. He informed Russin of what had taken place and

told her he wanted to see Mary Shrimp ("Shrimp"), also a Registered Nurse at MCF, *id.* at ¶ 24,

Defendant Szajer, the area supervisor, and Ms. Shatz, R.N., the Nurse Administrator at MCF. *Id.*

According to Plaintiff, Russin said nothing and turned off Cole's call bell. *Id.* Cole also claims

in conclusory fashion that Russin was part of a conspiracy to assault him, cover up the assault,

and make false misbehavior reports against him. *Id.* at ¶ 95.

Defendant Reese is a Licensed Practical Nurse at MCF, whose duties included making

rounds and handing out the evening medicine. *Id.* at ¶ 29. Plaintiff has alleged that she would

always try to give him the wrong medicine, drop his pills on the floor and do anything else to cause him pain. *Id.* at ¶ 79. According to Plaintiff, Reese was giving him medication at 9:35 p.m. on October 29, 2010 when Griffith came in and told her to leave before Griffith began assaulting Cole. *Id.* at ¶ 83. Cole claims that Reese was yelling "kill the nigger" from the next room while Griffith was choking him, and that she was part of a conspiracy to assault him, cover up the assault, and file false misbehavior reports. *Id.* at ¶¶ 83, 95.

Defendant Paluck is a nursing assistant at MCF, and her duties include assisting the nursing staff with washing and cleaning inmates who are unable to do it for themselves. *Id.* at ¶ 30. In his Amended Complaint, Plaintiff has alleged that Paluck came in with Reese and Griffith to give him his medicine and was told to leave the room before Griffith assaulted Cole. *Id.* at 83. Plaintiff claims to have seen Griffith and Paluck talking after the alleged assault, with Paluck saying that they had to get their story straight. *Id.* at ¶¶ 84-5. He maintains that Paluck was a part of a conspiracy to assault him, cover up the assault, and make false misbehavior reports. *Id.* at ¶ 95.

## C.    Defendant Rabideau

Defendant Rabideau is Deputy Superintendent of Health at MCF and was the Acting Superintendent during the time period relevant to Plaintiff's Amended Complaint. (Dkt. No. 16 at ¶ 6.) Plaintiff claims that between September 6, 2010 and October 31, 2010 he sent many letters of complaint to Rabideau regarding Durante and Szajer's continued harassment and filing of false misbehavior reports against him, and she never responded. *Id.* at ¶ 73.

In a September 30, 2010 letter, Plaintiff complained to Rabideau of continuing harassment by Defendants Durante and Szajer and asked Rabideau to meet with Durante, Szajer,

and Cole to find common ground to end the staff harassment and retaliation.  (Dkt. No. 16-3 at 1-2.)  According to Plaintiff, Rabideau did not respond to his letter.  (Dkt. No. 16 at ¶ 70-2.)

 In his October 1, 2010 letter to Rabideau, Plaintiff complained that Durante and Szajer were continuing to harass him, threaten assault, and file false misbehavior reports.   (Dkt. No. 16-3 at 3-4.)  In the letter, Cole faulted Rabideau and Defendant McCarthy for allowing the filing of false reports and turning a blind eye to Durante and Szajer's misconduct and asked why Rabideau never responded to his letters.  *Id.*  Cole complained that as long as Rabideau allowed Durante and Szajer's lies to continue, he would never get a break from keeplock and would never get his visiting privileges restored.  *Id.*

 In his October 4, 2010 letter to Rabideau, Plaintiff told her that Durante had spit in his face and hit him on the head with his keys.  *Id.* at 5-6.  He also complained again of the harassment and filing of false misbehavior reports by Durante and Szajer and told Rabideau that her failure to answer his letters had given Durante and Szajer a green light to continue the harassment and false misbehavior reports.  *Id.*  Plaintiff closed by asking Rabideau to review the misbehavior reports fairly.  *Id.*

 Rabideau responded to Plaintiff's October 4, 2010 letter on the same date with a short message saying that "I will personally be looking into your allegations of assault from CO Durante."[12]  (Dkt. No. 16-3 at 26.)  Plaintiff wrote to Rabideau upon receipt of her message

---

 [12]  Rabideau's message of October 4, 2010 indicates that it is in response to Plaintiff's correspondence of October 4, 2010 and September 28, 2010.  Plaintiff's Amended Complaint does not contain any allegations regarding a letter of September 28th nor has the letter been included with any of his submissions.  However, in his Supplemental Affidavit and Appendix, Plaintiff has described the letter as addressing Durante and Szajer's continued threats of assault. (Dkt. No. 18 at ¶ 23.)

informing her of the incident on October 3, 2010 where Durante had allegedly flipped Cole's wheelchair and kicked him.  *Id*. at 20-21.  Rabideau sent Plaintiff another message on October 8, 2010 advising him that "[w]e are looking into all of your requests to see what we can do."  (Dkt. 16-3 at 27.)

Plaintiff wrote to Rabideau again on October 11, 2010.  (Dkt. No. 16-3 at 22-25.)  In that letter, Cole expressed his continuing concern over her failure to respond to his many letters advising her of the threats and continued harassment by Defendants Durante and Szajer.  *Id.* at 23.

## D.     Defendant McCarthy

As Deputy Superintendent of Security at MCF, McCarthy is in charge of the supervision and discipline of the correctional staff at the facility.[13]  (Dkt. No. 16 at ¶ 7.)  In addition to copying McCarthy on his October 1, 2010 and first October 4, 2010 letters to Rabideau, Plaintiff communicated directly with McCarthy concerning his difficulties with Durante, Szajer, Griffith, and Lawrence, among other staff members.

In his October 4, 2010 letter to McCarthy concerning Durante and Szajer's continued harassment, Cole claimed that two misbehavior reports filed by Durante had been Szajer's doing. (Dkt. No. 16-3 at 7-8.)  On October 22, 2010, McCarthy sent Cole a memorandum responding to his claim that Durante had assaulted him on September 30, 2010.  (Dkt. No. 16-3 at 28.) McCarthy advised him that the incident had been investigated, and that although there was no

---

[13]  In the capacity of Acting Superintendent, McCarthy also denied Plaintiff's Grievance Complaints MHK 11844-10 and MHK 11845-10 against Durante and Szajer, and MHK 11849-10 against Lawrence on October 27, 2010.  (Dkt. No. 16-3 at 32-34.)

way for him to know for sure what had occurred, he had found inconsistencies in Cole's

statements about it. *Id.*  McCarthy also wrote "I would appreciate (sic) you write to me

exclusively when you have issue with security staff.  I am in the best position to address these

issue.  It serves no purpose to write to Albany or the Superintendent without my having a chance

to review the issue(s).  We spoke briefly about this and I left with the sense that you understood

where I was coming from."[14] *Id.*

On October 29, 2010, Plaintiff wrote to McCarthy to inform him of his allegations that

Griffith had assaulted him on that date.  *Id.* at 13-14.  Cole indicated in the letter that he was

giving notice to McCarthy first because he was in the best position to address the issues.  *Id*. at

14.  On November 3, 2010, McCarthy notified the Inspector General's Office of the alleged

assaults on Plaintiff of October 29 and 31, 2010 and forwarded Plaintiff's letters to that office.

(Dkt. Nos. 16 at ¶ 102 and 16-3 at 30.)

McCarthy sent Plaintiff a memorandum on November 29, 2010 (in response to a

November 26, 2010 letter from Cole) accusing him of improperly using the grievance system in

an adversarial manner, directing him to cease doing so, and assuring him that "disciplinary action

will continue until you cease this form of harassment." (Dkt. No. 18-2 at 34.)  On December 7,

2010, McCarthy sent Plaintiff another memorandum, this one in response to a December 6, 2010

letter from Cole, in which he wrote that he had found no evidence to support Plaintiff's many

allegations of malfeasance by the security and medical staff and suggested that Cole was the

---

[14]  McCarthy's request may have been in response to Plaintiff's letters to the Inspector General's Office, former Governor Paterson, and the State Commission of Correction on the subject of Durante and Szajer's harassment, and Durante's alleged assaults.  (Dkt. No. 16-3 at 9-12, 17-19.)

problem.  He recommended that Plaintiff make an effort to get along with staff.  (Dkt. No. 18-1 at 59.)

## II.     PROCEDURAL HISTORY

Plaintiff filed his original Complaint in this action on September 14, 2010.[15]  On November 16, 2010, Cole moved for leave to serve an amended and supplemental complaint adding new defendants and additional claims, including excessive force claims arising out of four alleged assaults by prison personnel.  (Dkt. No. 11.)  On March 23, 2011, Judge Mordue granted Plaintiff's motion to amend and designated Cole's proposed amended complaint adding fifteen new defendants and the new claims as the operative complaint in the action.  (Dkt No. 11-1; Dkt. No. 15 at 4.)   A week later, on March 30, 2011, Plaintiff moved to file a Verified Supplemental Affidavit of Truth and Appendix in Support of Affidavit of Truth ("Supplemental Affidavit and Appendix") in support of his claims.  (Dkt. Nos. 18, 18-1, and 18-2.)  The papers were accepted for filing by Magistrate Judge Lowe in an April 8, 2011 text order.

Defendants thereafter filed their Rule 12(b)(6) motion for partial dismissal of the Amended Complaint.  (Dkt. No. 62.)

---

[15]  Plaintiff's original Complaint named only sixteen defendants and focused largely on his claims regarding the manner in which the hearing and appeal on the Tier III misbehavior report that had been filed against him on July 2, 2010 had been handled, including allegations of forgery, conspiracy, and cover-up relating to an envelope that was relevant to the charges against him.  (Dkt. No. 1.)  As previously noted, Plaintiff is no longer pursuing those claims.  *See* p. 4, n.3, *supra.*

### III.      ANALYSIS

**A.      Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief."  *Id.* at 679  (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *See, e.g., Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations in plaintiff's opposition papers) (internal quotations and citations omitted), *vacated and amended in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004). *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).[16]

---

[16] In addition to Plaintiff's Amended Complaint and exhibits, I have considered his Affirmation in opposition with exhibits (Dkt. No. 65) and his Supplemental Affidavit and Appendix on Defendants' motion to dismiss. (Dkt. Nos. 18, 18-1, and 18-2.) Plaintiff filed an original Affidavit of Truth with Appendix as an exhibit to his original Complaint. (Dkt. No. 1-2; Dkt. No. 16 at .) The Supplemental Affidavit and Appendix, as previously noted, was not filed as an exhibit to Cole's Amended Complaint but rather a week after the District Court had issued an Order accepting the Amended Complaint as the operative pleading in the case. (Dkt. No. 15.) Plaintiff's Supplemental Affidavit and Appendix was served on counsel for the Defendants at the time it was filed. (Dkt. No. 18 at 33.)

Giving consideration to the Supplemental Affidavit and Appendix is particularly appropriate in this case where: (1) Plaintiff has actual notice of, and clearly relied upon, their contents in drafting his Amended Complaint and specifically asked the Court to review them

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  An opportunity to amend is not required where the plaintiff has already amended the complaint.[17]  *See Advanced Marine Tech., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).  In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).

### B.      Plaintiff's Official Capacity Claims For Money Damages Against the Defendants

Plaintiff has asserted official capacity claims for money damages under 42 U.S.C. ¶ 1983 against all of the remaining Defendants in his Amended Complaint.  (Dkt. No. 16 at ¶¶ 6- 7, 19-20, 25, 27-30.)  I recommend the *sua sponte* dismissal of those claims.[18]  The Eleventh

---

(Dkt. No. 18 at ¶ 66) (*see Chambers*, 282 F.3d at 153; *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)); and (2) Defendants have themselves requested that a document in the Appendix be considered in support of their motion without converting it to a motion for summary judgment.  (Dkt. No. 62-1 at 11, n. 4.)

[17]  In his Amended Complaint, Plaintiff has added new party defendants and claims not included in his original Complaint.  (Dkt. Nos. 1 and 16.)  Because the claims Plaintiff has elected to continue to pursue were for the most part first asserted in the Amended Complaint and are largely against newly named defendants, I have treated the Amended Complaint as Cole's initial pleading for purposes of considering whether leave to amend should be given.

[18]  Defendants did not seek dismissal of the official capacity claims for money damages asserted against them in their motion to dismiss.  However, the District Court is empowered to dismiss the claims *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii).  *See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *7, 2011 U.S. Dist. LEXIS 86831, at *19 (N.D.N.Y. July 13, 2011).  The *sua sponte* dismissal is limited to claims for money damages and does not include any claims for prospective injunctive relief Plaintiff may be asserting against any of the

Amendment protects a state against suits brought in federal court. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)) and bars all money damages claims against state officials acting in their official capacities, including the Defendants herein. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *see also Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (an inmate plaintiff's claims for damages against all individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity).

## C.    Plaintiff's Retaliation Claims

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak*, 389 F.3d at 381-83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to

---

Defendants in their official capacities. *See Ex parte Young*, 209 U.S. 123, 155-156 (1908) (allowing prospective injunctive relief in certain circumstances in official capacity suits brought under section 1983).

> dispose of on the pleadings because they involve questions of intent and
> are therefore easily fabricated.  Second, prisoners' claims of retaliation
> pose a substantial risk of unwarranted judicial intrusion into matters of
> general prison administration.  This is so because virtually any adverse
> action taken against a prisoner by a prison official--even those otherwise
> not rising to the level of a constitutional violation--can be characterized as
> a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds, Swierkewicz ,*534 U.S. 506.

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pidlypchak*, 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions.  *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation.  *Id.* (citing *Colon*, 58 F.3d at 872-73).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*  The Second Circuit has

held that the passage of "only six months" is sufficient to support an inference of a causal

connection.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell*

*Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)).

### 1.   Defendants Durante and Szajer

In Plaintiff's September 27, 2010 grievance complaint against Defendant Szajer, he

charged Szajer with harassment and threatening to file false misbehavior reports against Cole as

long as he continued to write complaints.  (Dkt. No. 18-2 at 37-38.)  On September 28, 2010,

Plaintiff wrote to Defendant Rabideau complaining of Durante and Szajer's continuing threats of

assault.[19]  (Dkt. No. 18 at ¶ 23.)  In a September 30, 2010 letter to Rabideau, Cole asked her to set

up a meeting with Defendants McCarthy, Durante, and Szajer to find some common ground to

end the "Staff Harassment Retaliation Repraesel Lies Threats Tag team set up."  (Dkt. No. 16-3 at

2.)  In his October 1, 2010 letter to Rabideau, Cole complained again about Durante and Szajer's

threats of assault and filing of false misbehavior reports against him in retaliation for his

grievance complaint. (Dkt. No. 16-3 at 3.)

According to Plaintiff's letter of October 4, 2010 to the Inspector Generals Office, on

September 27, 2010, Szajer came into his room and told him that if he had to answer one more of

Cole's grievance complaints he would kick it up a notch and harass him every day and write false

misbehavior reports.  In the same letter, Plaintiff wrote that Szajer had come to him in a

threatening manner "telling me what he going to do, he kick my wheelchair as he stated Cole we

will *ucking put you in the hospital on many machines and he Toney Szajer would just lie and say

---

[19]  Although it is not included among Plaintiff's submissions, Rabideau referenced the
September 28, 2010 letter in her October 4, 2010 note to him.  (Dkt. No. 16-3 at 26.)

I attack him." (Dkt. No. 16-3 at 9.)   In his letter of October 4, 2010 to Governor Patterson, Plaintiff wrote that Szajer came to him after Durante had spit in his face and hit him over the head with his keys, told him it would be like that when he filed a grievance complaint against him and proceeded to punch him in the chest and tell him to fight back because that is what he and Durante and other corrections officers wanted him to do so that they could take his life. (Dkt. No. 16-3 at 11.)

Durante allegedly assaulted Plaintiff on September 30, 2010, and on the same day filed a misbehavior report which resulted in Plaintiff being given 30 days in keeplock. (Dkt. No. 16 at ¶¶ 70-2; Dkt. No. 16-2 at 25-26.)   Durante filed another misbehavior report on Cole on October 1, 2010, which resulted in an additional 30 days in keeplock.   Plaintiff claims Durante assaulted him again on October 3, 2010.   (Dkt. No. 16 at ¶ 74.)   Plaintiff has asserted in his Supplemental Affidavit and Appendix that Szajer was present and was a participant in alleged assaults on September 30 and October 3, 2010.   (Dkt. No. 18 at ¶ 26.)

Both the September 27, 2010 grievance complaint and Plaintiff's letters of complaint to Rabideau of September 28, September 30, and October 1, 2010 constitute constitutionally protected conduct.[20]   *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (the right to file grievances is a constitutionally protected activity for retaliation purposes); *Decayette v. Goord*, No. 9:06-CV-783, 2009 WL 1606753, at *9, 2009 U.S. Dist. LEXIS 48127 (N.D.N.Y. June 8, 2009) (plaintiff's right to send a letter of complaint to a prison official was constitutionally

---

[20]   Plaintiff also commenced this lawsuit, another constitutionally protected activity, prior to the alleged assaults.   *See, e.g., Allah v. Malenski*, No. 04-CV-0912A(Sr), 2010 WL 2403098, at *9, 2010 U.S. Dist. LEXIS 57176, at *24 (S.D.N.Y. June 10, 2010) (prisoners have a constitutional right of access to the courts and may not be retaliated against by prison officials for exercising that right).   Szajer was named as a defendant in Cole's original complaint.

protected activity).

An assault by corrections officers is sufficient to "chill a person of ordinary firmness from continuing to engage in his First Amendment activity." *See Rivera v. Goord*, 119 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2000). Likewise, the filing of a misbehavior report which results in an inmate being placed in keeplock for 30 days has been found sufficient to satisfy the second element of a retaliation claim. *See, e.g., Jeffrey v. Ahmed*, No. 9:09-CV-0327, 2011 WL 4390220, at *11, 2011 U.S. Dist. LEXIS 106607, at *33 (N.D.N.Y. Aug. 22, 2011).

I find that Plaintiff's allegations of a "tag team" approach of harassment, the filing of false misbehavior reports, threats, and assaults by Durante and Szajer make a sufficient factual showing that the two were acting in concert with respect to Plaintiff's retaliation claims. Moreover, the temporal proximity between Plaintiff's grievance complaint and letters of complaint and the alleged assaults and false misbehavior reports is sufficiently close to plausibly suggest a causal relationship. Therefore, I recommend that Defendants Durante and Szajer's motion to dismiss the Plaintiff's retaliation claims against them be denied.[21]

---

[21]  Durante also filed misbehavior reports against Plaintiff on each of the two days after Cole had filed his October 4, 2010 grievance complaint against him with respect to the alleged assaults. (Dkt. No 16-2 at 13-15 and 19-21; Dkt. No. 16-3 at 33.) Cole was found guilty in both cases, and the punishment for the first was 30 days loss of radio and for the second was 6 days loss of packages, commissary, earphones/radio, and good time. (Dkt. No. 16-2 at 14 and 20.) With the possible exception of the loss of good time, the punishments were likely not serious enough to deter a person of ordinary firmness from exercising his constitutional rights. *Gill*, 389 F.3d at 381; *see also Bartley v. Collins*, No. 95 Civ. 10161 (RJH), 2006 WL 1289256, at *7, 2006 U.S. Dist. LEXIS 28285, at *21 (S.D.N.Y. May 10, 2006) (The filing of misbehavior reports that result in a "temporary loss of various privileges such as permission to visit the commissary do not constitute adverse action because they are *de minimis*; they do not constitute penalties that would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights.").

**2.     Defendant Griffith**

In his Memorandum of Law, Plaintiff contends that Griffith assaulted him on October 29, 2010 in retaliation for his filing of grievance complaints #MHK11844-10 and #MHK11845-10 on October 4, 2010.  (Dkt. No. 65 at 23.)  However, those grievances relate to the alleged assaults on Plaintiff by Defendant Durante (and possibly Szajer) on September 30 and October 3, 2010, and were not directed against Griffith.  (Dkt. No. 16-3 at 33-34.)  There are no facts alleged in the Plaintiff's Amended Complaint supporting a causal connection between Plaintiff's filing of those grievance complaints against Durante and the alleged assault by Griffith, or suggesting that the protected conduct was a "substantial or motivating factor" in Griffith's alleged assault on Plaintiff.  *See Mt. Healthy,* 429 U.S. at 287.  Nor has Plaintiff identified any other protected conduct to which Griffith's alleged assault can be causally connected.  Given the absence of adequate factual support to state a plausible retaliation claim against Griffith, I recommend that the claim be dismissed, without prejudice to Plaintiff's right to replead.

**3.     Defendant Lawrence**

Defendant Lawrence's alleged assault of Plaintiff on October 31, 2010 was preceded by Cole's October 7, 2010 grievance complaint against Lawrence claiming that the Defendant had threatened and harassed Plaintiff by tampering with his food and filing false misbehavior reports. (Dkt. No. 16-3 at 33.)  Cole claims that the October 31, 2010 assault was in retaliation for the October 7, 2010 grievance complaint.  (Dkt. No. 65 at 23.)  Filing of the grievance complaint was protected conduct, and the alleged assault constituted an "adverse action" against Plaintiff that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.  *See Rivera,* 119 F. Supp. 2d at 339-340.  Furthermore, the less than one

-27-

month time period between the filing of the grievance and the alleged assault is sufficient to support an inference that Plaintiff's grievance complaint played a substantial part in the alleged assault. *See Espinal,* 558 F.3d at 129 (the passage of "only six months" is sufficient to support an inference of a causal connection ).  Therefore, I recommend that Lawrence's motion to dismiss Plaintiff's retaliation claim against him be denied.

**D.    Plaintiff's Claim of Medical Indifference Against Defendant Russin**

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable

state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). There is no bright-line test to measure the seriousness of a prisoner's medical condition. *Stevens v. Goord*, 535 F. Supp. 2d 373, 383 (S.D.N.Y. 2008). However, the Second Circuit has set forth factors to consider when determining whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702. Inquiry into whether a plaintiff had a serious medical need "must be tailored to the specific circumstances of each case." *Smith,* 316 F.3d at 185.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996 )). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-03. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *See Farmer*, 511 U.S. at 825; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997).

-29-

An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-6.

Plaintiff claims that when he pressed his call bell following the alleged assault by Griffith on October 29, 2010 at approximately 9:35 and asked to see Nurse Shrimp, Szajer, and the Nurse Administrator, Defendant Russin answered the call, said nothing, and turned off Cole's call bell. (Dkt. No. 16 at ¶¶ 82, 85 and 95.)  The use of force report, submitted as an exhibit to Plaintiff's Amended Complaint, shows that Russin examined Cole at 10:30 p.m. that evening, approximately one hour after he pressed his call bell.  (Dkt. No. 16-3 at 43.)  At that time she observed "(1) ½ inch abrasion above bridge of nose (2) 1 x ½ inch abrasion Rt. cheek (3) 3x4 inch pink area [left] chest (4) 1 x ½ inch pink area below Rt ear (5) 3/4 x ½ inch pink area below [left] ear." *Id.*  The Report gives no indication that any treatment was administered to Cole by Russin. *Id.*  Plaintiff's health provider progress notes reveal that at 12:50 a.m. on October 30, 2010, he asked C. Foosek to cleanse his abrasions.  She cleansed the reddened/pink areas on his neck and cheeks with sterile water and cleansed and applied a bandage to a very small abrasion on Plaintiff's nose at his request.  (Dkt. No. 65 at 5.)

Prison officials can deprive inmates of medical treatment by unnecessarily delaying adequate medical treatment. *Smith,* 316 F.3d at 185.  Where, as in this case, a plaintiff's claim is one of a temporary delay in the provision of otherwise adequate treatment, "it is appropriate to focus on the challenged delay ... in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Id.*

Plaintiff, who sustained only two small abrasions and three small pink areas in the alleged

assault by Griffith, has failed to allege the plausible existence of a sufficiently serious medical

condition of constitutional proportions as required to state claim for deliberate medical

indifference under the Eighth Amendment. *Caiozzo,* 581 F.3d at 72 (plaintiff must show that he

or she had a serious medical condition); *see also Jordan v. Fischer*, 773 F. Supp. 2d 255, 261-2

(N.D.N.Y. 2011) (superficial red marks were not sufficiently serious to meet the objective test for

medical indifference); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 354 (N.D.N.Y. 2010) (two

bruises and a superficial laceration were not enough to satisfy the objective test for medical

indifference); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44 (N.D.N.Y. 2009) (black eyes, bruising,

lacerations, red spots, and kick marks did not constitute a serious medical need).  Further, Cole

has failed to allege that he was harmed by the approximately one hour delay from the time of the

alleged assault until his examination by Defendant Russin and the three hour delay in the

receiving treatment for his minor injuries. *See, e.g., Martinez v. Lape,* No. 9:09-CV-0665

(TJM/RFT), 2011 WL 4527943, at *5, 2011 U.S. Dist. LEXIS 116106, at *15-16  (N.D.N.Y. Mar.

28, 2011) (dismissal for failure to state a claim proper where amended complaint contained

insufficient factual support to show serious harm or serious risk of harm as a result of alleged

delay in response time).

Plaintiff's pleading deficiencies with regard to the objective element of a medical

indifference claims warrant dismissal of his claim for deliberate indifference to his serious

medical need by Defendant Russin.[22]  I therefore recommend that Defendant Russin's motion to

---

[22]  It is also doubtful that Plaintiff set forth sufficient factual matter to state a claim with
regard to the subjective element of an Eighth Amendment claim for relief for deliberate
indifference to serious medical needs, since he has not alleged facts which would allow me to
infer more than the mere possibility that Russin "was aware of facts from which the inference
could be drawn that [Cole] had a serious medical need," and that she "actually drew that

dismiss Plaintiff's Eighth Amendment medical indifference claim be granted.  Given the documented lack of seriousness of Plaintiff's alleged injuries, and the absence of harm from the delay in treatment, I also recommend that Cole be denied the right to replead his deliberate indifference claim against Defendant Russin.  *See Cuoco*, 222 F.3d at 112 (an opportunity to amend is not required where a better pleading will not cure the substantive deficiencies in the complaint).

**E.     Plaintiff's Claim of Deliberate Indifference to his Safety and Failure to Intervene Against Defendants Reese and Paluck**

Plaintiff claims that Defendants Reese and Paluck's failure to intervene on his behalf when he was assaulted by Griffith constituted deliberate indifference to his safety.  (Dkt. No. 65 at 20.) Both Reese and Paluck were in Cole's room with Griffith prior to the alleged assault on October 29, 2010.  (Dkt. No. 16 at ¶ 83.)  They left in a hurry when Griffith directed them to leave the room before the assault began.  *Id.*   However, according to Plaintiff, during the time Griffith was allegedly choking him, Reese was in the next room yelling "kill the nigger."  *Id*.

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996), citing *Farmer*, 511 U.S. at 832.  Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence.  *Curley v.  Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Anderson v. Branen*,

---

inference."  *Chance*, 143 F.3d at 702-03.  However, since in order to state a plausible medical indifference claim Plaintiff must include sufficient factual matter as to both the objective and subjective elements of the claim, it is not necessary for me to make that determination.

17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers). A state actor can be held liable for failure to prevent another state actor from committing a constitutional violation if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd.*, 461 Fed.Appx. 18 (2012). The duty to intervene has been found applicable to prison nurses. *See Decayette,* 2009 WL 1606753, at **3, 8, U.S. Dist. LEXIS 48127 (summary judgment denied on Eighth Amendment failure to intervene claim against a prison nurse who was alleged to have observed plaintiff being beaten by corrections officers); *see also Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997) (summary judgment denied state hospital nurse who "stood idly by" and watched while plaintiff prisoner was beaten by corrections officers).

I find that Plaintiff has alleged facts sufficient to state a plausible Eighth Amendment claim that Defendant Reese failed to intervene. Cole has alleged facts supporting a claim that there was a substantial risk that he would suffer serious harm at Griffith's hand for purposes of this motion. (Dkt. No. 16 at ¶¶ 82-84.) Moreover, Plaintiff has alleged in his Amended Complaint that rather than intervene or seek assistance for Plaintiff, Reese stood in the next room while he was being choked by Griffith and yelled "kill the nigger." *Id.* at ¶ 83. That allegation suggests that the Defendant was aware that there was a substantial risk that Cole would suffer

serious harm, and she actively encouraged Griffith to inflict serious harm instead of taking reasonable measures to abate it.  Therefore, I recommend that Defendant Reese's motion to dismiss be denied.

Plaintiff's Amended Complaint contains no factual allegations with regard to Defendant Paluck's actions from the time Griffith directed her to leave Cole's room until she allegedly told Griffith that they had to get their story straight after the claimed assault was over.  *Id.* at  ¶¶ 84-85. Given the absence of adequate factual support to state a plausible Eighth Amendment claim against Paluck, including the absence of allegations as to her actions after she was ordered out of the room by Griffith and her knowledge concerning a risk of serious harm to Plaintiff, I recommend that Defendant Paluck's motion to dismiss Plaintiff's Eighth Amendment claim against her be granted.  However, I recommend that Plaintiff be allowed to replead with regard to Paluck.

**F.    Plaintiff's Pendent State Claims for Negligence and Assault and Battery**

Defendants argue that Plaintiff's state law claims for negligence and assault and battery, presumably directed at Defendants Szajer, Durante, Griffith, and Lawrence, should be dismissed pursuant to New York Correction Law § 24. (Dkt. No. 62-1 at 7.)  Defendants are correct.  Section 24 provides as follows:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the

> duties of any officer or employee of the department shall be
> brought and maintained in the court of claims as a claim against the
> state.

This statute precludes inmates from suing DOCS employees in their personal capacity in New York State courts. *See Arteaga v. State*, 532 N.Y.S.2d 57, 62 (1988). The bar also applies to pendent state law claims in federal court because "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir.1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* at 15.

In 2009, the United States Supreme Court held that Correction Law § 24 is unconstitutional to the extent it precludes inmates from pursuing § 1983 claims. *Haywood v. Drown*, 556 U.S.729 (2009). However, the courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCS employees and have continued to dismiss those claims under Correction Law § 24. *See O'Diah v. Fischer*, No. 08-CV-941 (TJM/DRH), 2012 WL 987726, at *21, 2012 U.S. Dist. LEXIS 39232, at *60 (N.D.N.Y. Feb. 28, 2012); *Joy v. New York*, No. 5:09-CV-841 (FJS/ATB), 2010 WL 3909694, at *4-5, 2010 U.S. Dist. LEXIS 104641, at *15-16 (N.D.N.Y. Sept. 30, 2010); *Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010 WL 4905240, at *16, 2010 U.S. Dist. LEXIS 124737, at *47-48 (N.D.N.Y. Sept. 29, 2010); *Crump v. Ekpe,* No. 9:07-CV-1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799, at *61 (N.D.N.Y. Feb. 8, 2010). For the reasons set forth in those decisions, I recommend that the Court dismiss Plaintiff's

pendent state law claims in this case without leave to amend.

**G.    Plaintiff's Conspiracy Claim Against Defendants Griffith, Szajer, Russin, Reese, and Paluck**

In order to support a claim for conspiracy under 42 U.S.C. § 1983, "a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Hamilton v. Fisher*, No. 9:10-CV-1066 (MAD/RFT), 2012 WL 987374, at *12, 2012 U.S. Dist. LEXIS 39118, at *36 (N.D.N.Y. Feb. 29, 2012) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (citations and internal quotation marks omitted).

Plaintiff has alleged in conclusory fashion that on October 29, 2010 at 9:35 p.m. (the time at which Griffith allegedly assaulted Cole), a group of Defendants, including Griffith, Szajer, Russin, Reese, and Paluck, got together and "conspired to assault the Plaintiff and cover it the assault up and make false behavior reports."  (Dkt. No. 16 at ¶ 95.)   However, Plaintiff's Amended Complaint fails to set forth the factual details necessary to sustain a conspiracy claim – the existence of an agreement and meeting of the minds, including details of time, place, and the alleged effect of the conspiracy.  *See Clayton v. City of Poughkeepsie*, No. 06 Civ. 4881 SCR, 2007 WL 2154196, at *5, 2007 U.S. Dist. LEXIS 55082, at *15-16 (S.D.N.Y. June 21, 2007).  It contains no factual allegations indicating that the alleged parties to the conspiracy got together prior to the alleged assault by Griffith to plan or agree upon the assault, a cover up plan, or the

filing of a misbehavior report, or that they took any steps in furtherance of any such plan prior to the assault.

The only non-conclusory factual allegation made in support of Plaintiff's conspiracy claim is that Defendant Paluck commented to Griffith following the claimed assault that they needed to get their stories straight.  (Dkt. No. 16 at ¶¶ 84-85.)  A claim that parties conspired to conceal the truth about an incident after the fact does not by itself set forth a plausible conspiracy claim. *Clayton*,  2007 WL 2154196, at *5, 2007 U.S. Dist. LEXIS 55082, at *15-16.  I therefore recommend that Plaintiff's claim for conspiracy be dismissed with leave to replead in accordance with the requirements for stating a conspiracy claim set forth herein.

## H.    Plaintiff's Supervisory Liability Claims Against Defendants Rabideau and McCarthy

In a § 1983 action against a defendant in his or her personal capacity, the plaintiff must establish that the defendant, acting under color of state law, caused the plaintiff to be deprived of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).  The United States Supreme Court has made it clear that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

The Second Circuit has held that personal involvement by a supervisor under § 1983 may be found where the supervisor has: "(1) participated directly in the alleged constitutional

violation, (2) failed to remedy a violation after learning of it through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in managing subordinates who committed constitutional violations, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).[23]

"*[R]espondeat superior* liability does not lie against corrections officers in Section 1983 actions" (*Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)), and "[h]olding a position in a hierarchical chain of command, without more is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate ... a prison superintendent in a § 1983 claim" ) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass*, 790 F.2d at 263.

### 1.    Defendant Rabideau

Plaintiff has alleged in his Amended Complaint that he sent a number of letters to Acting Superintendent Rabideau complaining that he was being harassed by Defendants Durante and

---

[23] The Supreme Court's decision in *Ashcroft*, 556 U.S. 662 has arguably nullified some of the categories set forth in *Colon*.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009).  However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of these motions that *Colon* remains good law.

Szajer, that they were filing false misbehavior reports against him and threatening to assault him, and that Durante actually did assault him on two occasions.  (Dkt. No. 16-3 at 1-6, 23.)  In his letters to Rabideau, Cole complained that by turning a blind eye to their alleged misconduct and failing to respond to his requests she had given Durante and Szajer a green light to continue that behavior.  *Id.* at 3-6.  In his Memorandum of Law, Plaintiff argues that he has stated a claim for supervisory liability against Rabideau because she would have had notice of staff misconduct complaints, grievances, and letters by virtue of the procedure for dealing with allegations of employee harassment of inmates set forth in the regulatory guidelines at N.Y.Comp. Codes .R. and Regs. tit. 7, § 701.8 (2010).[24]  (Dkt. No. 65 at 25.)

The mere receipt of a grievance appeal, or in this case, the grievance itself, "does not suffice to place a supervisor on notice that a constitutional violation has occurred."[25]  *Mandell v. Goord,* No. 9:06-CV-01478 (GTS/DEP), 2009 WL 3123029, at *13, 2009 U.S. Dist. LEXIS 90043, at *35-36 (N.D.N.Y. Sept. 29, 2009).  Further, simply affirming the denial of a grievance is insufficient to confer personal responsibility on a defendant under § 1983.  *See Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007).  Nor can supervisory liability be established by

---

[24]  N.Y.Comp. Codes .R.and Regs. tit. 7, § 701.8(b) requires that all documents submitted with grievances alleging harassment be forwarded to the superintendent by the close of business on the date of filing.  Under § 701.8((d) and (f), if the superintendent determines that it is a true case of harassment, he or she must render a decision on the grievance within twenty-five days.  If the superintendent determines that the grievance does not present a bona fide harassment issue, it is returned to the IGRC for normal processing. § 701.8(c).

[25]  Supervisors are permitted to delegate responsibility for handling grievances to subordinates and may properly rely on the subordinate's determination.  *Burns v. Trombly*, 624 F. Supp. 2d 185, 205 (N.D.N.Y. 2008).  In this case, Plaintiff's appeals from grievance complaints MHK 11844-10, MHK 11845-10, and MHK 11849-10 were decided by Defendant McCarthy as Acting Superintendent.  (Dkt. No. 16-3 at 32-34.)

an official's failure to respond to grievance letters or requests for investigations from prisoners.[26]
*See, e.g., Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("It is well-established
that an allegation that an official ignored a prisoner's letter of protest and request for an
investigation of allegations made therein is insufficient to hold that official liable for the alleged
violations.") (citation and internal quotation marks omitted); *Walker v. Pataro*, No. 99 Civ. 4607
(GBD)(AJP), 2002 WL 664040, at *12, 2002 U.S. Dist. LEXIS 7067, at *43 (S.D.N.Y. Apr. 23,
2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute
personal involvement, it would result in liability merely for being a supervisor, which is contrary
to black-letter law that 1983 does not impose *respondeat superior* liability.").

`        "On the other hand, where a supervisory official receives and acts on a prisoner's
grievance (or substantively reviews and responds to some other form of inmate complaint),
personal involvement will be found under the second *Colon* prong: the defendant, after being
informed of the violation through a report or appeal, failed to remedy the wrong." *Walker,* 2002
WL 664040, at *13, 2002 U.S. Dist. LEXIS 7067, at *44 (citations and internal quotation marks
omitted) (in denying Superintendent's motion for summary judgment the court noted that
responses to grievances or other inmate complaints "which attempt to defend or explain alleged
constitutional violations have been found sufficient to sustain a plaintiff's claim of personal

---

[26] "It is well established ... that inmate grievances procedures are undertaken voluntarily
by the states, that they are not constitutionally required, and accordingly that a failure to process,
investigate, or respond to a prisoner's grievance does not in itself give rise to a constitutional
claim."  *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008) (citing cases).  *See
also Groves*, 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *24 (inmates do not have
a constitutional right to an investigation of any kind by the government) (citation omitted).

involvement.");[27] *see also Johnson,* 234 F. Supp. 2d at 363 ("personal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievances or otherwise reviews and responds to a prisoner's complaint."); *Ramos v. Artuz*, No. 00 Civ. 0149 LTS HBP, 2001 WL 840131, at *10, 2001 U.S. Dist. LEXIS 10327, at *24-28 (S.D.N.Y. July 25, 2001) (court found personal involvement where a supervisory official's involvement "went beyond merely the receipt of complaint letters" and letters contained detailed information that should have been acted upon).

The only response Plaintiff received to his many complaint letters to Rabideau concerning Durante and Szajer were the two one sentence notes of October 4 and 8, 2010 letting Cole know that she would "personally be looking into [his] allegations of assault from CO Durante," and that "[w]e are looking into all of your requests to see what we can do."  (Dkt. No. 16-3 at 26-27.) There are no allegations in Plaintiff's Amended Complaint suggesting that he heard anything further from Rabideau, that she ever followed through on looking into Cole's assault allegations or any of his other requests, or that she took any action with regard to Plaintiff's complaints or grievances.

Rabideau can not be held liable based solely on a failure to respond to Plaintiff's complaint letters and requests for investigations. *See Johnson,* 234 F. Supp. 2d at 363.  However, in this case, she did respond by telling Cole that she was going to get personally involved in looking into his assault claim against Griffith and that she would be looking into his other complaints as well.  Liberally construing Plaintiff's Amended Complaint and its exhibits and

---

27  In *Walker*, the Superintendent whose motion for summary judgment was denied had responded to the plaintiff's grievance by informing him that it "was unsubstantiated based upon information received during investigation"  *Id.*, 2002 WL 664040, at *13, 2002 U.S. Dist. LEXIS 7067, at * 46-47.

interpreting them to raise the strongest arguments they suggest, Plaintiff has alleged a plausible

claim that Rabideau became personally involved in Durant and Szajer's alleged excessive use of

force and unconstitutional retaliatory conduct by failing to take steps to remedy the alleged

wrongs after learning of them and informing Cole of her intent to become personally involved in

investigating them.[28]  *See Williams v. Smith*, 781 F.2d 319, 323 (2d. Cir 1986) (supervisory

official may be personally involved in a constitutional deprivation by failing to remedy a wrong

after learning of it); *Muhammad v. Rabinowitz*, No. 11 Civ. 2428 (HB), 2012 WL 1155098, at *5,

2012 U.S. Dist. LEXIS 49163, at *15-16 (S.D.N.Y. Apr. 6, 2012) (allegations that supervisory

personnel were aware of the allegedly unconstitutional conduct and were "either grossly negligent

in their supervision [of the personnel personally involved in the conduct], aware of violations and

failed to remedy the wrong, deliberately indifferent or condoned the alleged unconstitutional

conduct" were sufficient to state a claim under § 1983).  Therefore, I recommend that Defendant

Rabideau's motion to dismiss be denied.

### 2.    Defendant McCarthy

I find that Plaintiff has also stated a claim against Defendant McCarthy under the second

*Colon* prong.  McCarthy was copied on Plaintiff's October 1, 2010 letter to Rabideau complaining

of Durante and Szajer's alleged harassment, threats of assault, and false misbehavior reports.

(Dkt. No. 16-3 at 3-4.)  In his October 4, 2010 letter to McCarthy, Plaintiff complained about two

---

[28]  It may ultimately turn out that Rabideau delegated responsibility for investigating
Plaintiff's complaints about Durante and Szajer to Defendant McCarthy since he is the one who
appears to have investigated the complaints and informed Cole that he had found no wrongdoing
by the corrections staff.  (Dkt. No. 16-3 at 28.)   If she did, Rabideau could properly rely on
McCarthy's determination.  *Burns*, 624 F. Supp. 2d at 205.   However, at this point, Rabideau's
memo assuring Plaintiff that she was going to personally look into his complaints is sufficient to
state a claim.

false misbehavior reports that had been filed by Durante, which were alleged by Cole to be Szajer's doing.  The misbehavior reports presumably are those filed by Durante on September 30 and October 1, 2010, each of which resulted in the imposition of a sentence of thirty days in keeplock.  (Dkt. Nos. 16-2 at 22-26.)

The submissions considered on this motion suggest that McCarthy was actively involved in investigating and acting upon Plaintiff's complaints concerning Durante and Szajer.  On October 22, 2010 McCarthy informed Plaintiff that the alleged September 30, 2010 assault by Durante had been investigated, and that although there was no way to be certain what had actually happened, McCarthy had found inconsistencies in Plaintiff's statements.  (Dkt. No. 16-3 at 28.)

In his October 22, 2010 memorandum, McCarthy asked Cole to write exclusively to him when he had issues with security staff, raising an inference that McCarthy not only intended to be personally involved in addressing Plaintiff's complaints that Durante and Szajer had violated his constitutional rights by using excessive force and filing false misbehavior reports, but that he wanted to maintain control over any investigation conducted of the claims.[29]  *Id.*  On November 29, 2010, a month after Griffith and Lawrence allegedly assaulted Plaintiff, McCarthy threatened Cole with disciplinary action if he continued using the grievance system in an adversarial manner. (Dkt. No. 18-2 at 34.)

McCarthy's December 7, 2010 memorandum to Plaintiff indicating that his investigation had uncovered no malfeasance by the security and medical staffs and concluding that Cole was the

---

[29]  McCarthy's October 22, 2010 memorandum containing his conclusions with regard to the alleged assault by Durante and his request that Cole write only to him on staff issues predated the alleged assaults by Griffith and Lawrence by approximately a week, arguably raising an inference that the corrections staff at MCF, including Griffith and Lawrence, may have been led to believe that there would be no consequences for unconstitutional conduct towards Plaintiff.

problem further reveals his personal involvement and, along with his other communications with

Plaintiff, provide a plausible factual basis for denying his motion to dismiss.  (Dkt. No. 18-1 at

59.)  *See Bourgoin v. Weir*, No. 3:10cv391 (JBA), 2011 WL 4435695, at *5, 2011 U.S. Dist.

LEXIS 108778, at *14 (D. Conn. Sept. 23, 2011) ("[a] supervisor's response to a prisoner's

grievance or complaint that attempt[s] to defend or explain alleged constitutional violations is

sufficient to establish the personal involvement of that supervisor.") (citation and internal

quotation marks omitted); *Walker,* 2002 WL 664040, at *13, 2002 U.S. Dist. LEXIS 7067, at *47

(grievances or other inmate complaints "which attempt to defend or explain alleged constitutional

violations have been found sufficient to sustain a plaintiff's claim of personal involvement".);

*Johnson,* 234 F. Supp. 2d at 363 (personal involvement where a supervisory official receives and

acts on a prisoner's grievances or otherwise reviews and responds to a prisoner's complaint).  I

therefore recommend that Defendant McCarthy's motion to dismiss be denied.

## I.      **Defendants' Motion for a More Definite Statement**

Defendants have moved for a more definite statement pursuant Federal Rule of Civil

Procedure 12(e) in the event the Court does not grant their motion for partial dismissal of the

Plaintiff's Amended Complaint.  Rule 12(e) permits the filing of a motion for a more definite

statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous

that a party cannot reasonably be required to frame a responsive pleading."  Requests for a more

definite statement are generally disfavored and should not be granted unless "the complaint is so

excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant

seriously in attempting to answer it."  *Holmes v. Fischer*, 764 F. Supp. 2d 523, 531 (W.D.N.Y.

2011) (citation and internal quotations omitted).  Plaintiff's Amended Complaint is neither so

vague nor so ambiguous as to be unintelligible, and Defendants will not be prejudiced by having

to answer whatever allegations remain after determination of their motion to dismiss.  Moreover,

to the extent Plaintiff's Amended Complaint may be deemed to be vague or ambiguous,

Defendants have the benefit of the numerous exhibits to the Amended Complaint and the

clarifying materials that Plaintiff submitted in his opposition to their motion to dismiss.  (Dkt.

Nos. 16-2, 16-3,65, and 69.)   In light of the foregoing, Defendants' motion for a more definite

statement is denied.

     **WHEREFORE**, it is hereby

     **RECOMMENDED** that Defendants' motion for partial dismissal of the Plaintiff's

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 62) be

**<u>GRANTED IN PART AND DENIED IN PART</u>**.  Specifically, I recommend the partial

dismissal of Plaintiff's Amended Complaint as follows:

     1.    Dismissal by Plaintiff's consent as to the claims against Defendants DOCS, Brian

Fischer, Jack McDaniel, Albert Prack, Jeffrey St. Louis, Edward Dauphin, R. Judway, M.J.

Cappadonia, R.J. Miller, S. Purdy, C. Cucharale, H. Smith, T. Meachum, J. Mecca, D. Ashe,

Debora Kinderman, A. Papaleo, Judy Palmer, C. Vail, Ted Vauss, Mary Shrimp, and Renna

Piecce, without leave to amend;

     2.    Dismissal on abandonment grounds of all claims arising out of or related to the

July 2, 2010 Tier III inmate misbehavior report against Plaintiff  and the hearing held in

connection with the report, without leave to amend;

     3.    Dismissal on abandonment grounds of all claims arising out of Defendant

Rabideau's alleged failure to review the denials of Plaintiff's SHU confinement reviews in a fair

manner, and Rabideau and Defendant McCarthy's denial of his requests for restoration of his
visiting privileges, without leave to amend;

4.      The *sua sponte* dismissal on Eleventh Amendment grounds of all claims seeking
money damages that have been asserted against the Defendants in their official capacities, without
leave to amend;

5.      Dismissal of Plaintiff's First Amendment retaliation claim against Defendant
Griffith, with leave to amend;

6.      Dismissal of Plaintiff's Eighth Amendment claim for deliberate indifference to his
medical needs against Defendant Russin, without leave to amend;

7.      Dismissal of Plaintiff's Eighth Amendment claim for deliberate indifference to his
safety and failure to intervene against Defendant Paluck, with leave to amend;

8.      Dismissal of Plaintiff's state law claims for assault and battery and negligence,
without leave to amend; and

9.      Dismissal of Plaintiff's § 1983 conspiracy claim against Defendants Griffith,
Szajer, Russin, Reese, and Paluck, with leave to amend; and it is further

**RECOMMENDED** that Defendants' motion for partial dismissal be **DENIED** as to:
Plaintiff's (1) First Amendment claim for retaliation against Defendants Durante, Szajer, and
Lawrence; (2) Eighth Amendment claim against Defendant Reese for deliberate indifference to
Plaintiff's safety and failure to intervene; and (3) claims against Defendants Rabideau and
McCarthy for their alleged failure to remedy the alleged violation of Plaintiff's rights under the
First and Eighth Amendments after learning of those violations through Plaintiff's letters of
complaint; and it is further

**RECOMMENDED** that Defendants be directed to answer those allegations in the Plaintiff's Amended Complaint that relate to the claims on which dismissal is denied as well as Plaintiff's claims for excessive force that were excepted by Defendants from their motion to dismiss; and it is hereby

**ORDERED** that Defendants' request for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: August 31, 2012
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge